Kavon Adli, California State Bar No. 203040
Seth W. Wiener, California State Bar No. 203747
THE INTERNET LAW GROUP
9100 Wilshire Boulevard, Suite 725 E
Beverly Hills, California 90212
Telephone Number: (310) 910-1496
Facsimile Number: (310) 356-3257

Attorneys for Specially-Appearing Defendant
IMPULSE REPAIR LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY-LISA GUILLAUME, an individual;<br>ROBERT LAICH, an individual;<br>RYAN ARTOLACHIPE, an individual;<br>BRYCE MACCHARLES, an individual;<br>GRACIELA SAENZ, an individual;<br>SARAH SMITH, an individual;<br>JADE WALLIS, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>IMPULSE REPAIR LLC, a Utah limited liability company; and DOES 1-100, inclusive;<br><br>Defendants. | Case No.: 2:21-cv-6067<br><br>**NOTICE OF REMOVAL** |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Impulse Repair LLC removes this action from the Superior Court of California, County of Los Angeles, to this United States District Court for the Central District of California, Western Division.

All process, pleadings, and orders served upon Impulse Repair LLC in this action are attached.

The grounds for removal are:

1. This action was commenced on June 8, 2021, in the Superior Court of California, County of Los Angeles.

2. Los Angeles is embraced by this United States District Court for the Central District of California, Western Division.

3. This Court has original jurisdiction of this action under 28 U.S.C. § 1332 because, as further alleged below, the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

4. The complaint demands a sum exceeding $75,000. (Compl. at 21:5–17.) *See* 28 U.S.C. § 1446(c)(2).

5. The complaint alleges that each plaintiff is domiciled in California. (Compl. ¶¶ 15–21.) Each plaintiff is thus a citizen of California.

6. Each member of defendant Impulse Repair LLC is a citizen of Utah.

7. All other defendants are sued under fictitious names. (Compl. ¶ 24.) *See* 28 U.S.C. § 1441(b)(1).

8. A proof of service avers that the summons and complaint were mailed on July 2, 2021, in accordance with section 415.40 of the California Code of Civil Procedure. Service was thus deemed complete on July 12, 2020. *See* Cal. Civ. Proc. Code § 415.40. This notice of removal is being filed before August 11, 2020, which is timely. *See* 28 U.S.C. § 1446(b)(1).

Dated: July 28, 2021

THE INTERNET LAW GROUP

Seth W. Wiener, Esq.
Attorneys for Specially-Appearing Defendant
IMPULSE REPAIR LLC

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| Joshua Cintas, Esq.<br>State Bar No: 334594<br>9815 Kika Ct.<br>San Diego, CA 92129<br>TELEPHONE NO.: (858) 395 2646 FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* joshmcintas@gmail.com<br>ATTORNEY FOR *(Name):* Plaintiffs | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles**<br>STREET ADDRESS: 111 N. Hill St.<br>MAILING ADDRESS: 111 N. Hill St.,<br>CITY AND ZIP CODE: Los Angeles 90012<br>BRANCH NAME: Stanley Mosk Courthouse | |
| PLAINTIFF/PETITIONER: Mary-Lisa Guillaume, et al<br>DEFENDANT/RESPONDENT: Impulse Repair LLC | CASE NUMBER:<br>21STCV21495 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [x] summons
   b. [x] complaint
   c. [ ] Alternative Dispute Resolution (ADR) package
   d. [ ] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [ ] other *(specify documents):*
3. a. Party served *(specify name of party as shown on documents served):*
   Impulse Repair LLC

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
4. Address where the party was served:
   255 W 400 N Huntington, UT 84528
5. I served the party *(check proper box)*

   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* (2) at *(time):*

   b. [ ] **by substituted service.** on *(date):* at *(time):* I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

   (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

   (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

   (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):* from *(city):* **or** [ ] a declaration of mailing is attached.

   (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

POS-010

| PLAINTIFF/PETITIONER: Mary-Lisa Guillaume, et al<br>DEFENDANT/RESPONDENT: Impulse Repair LLC | CASE NUMBER:<br>21STCV21495 |
|---|---|

5. c. [x] **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date):* 07/02/2021 (2) from *(city):* San Diego, CA

   (3) [ ] with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

   (4) [x] to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. [ ] **by other means** *(specify means of service and authorizing code section):*

   [ ] Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. [ ] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of *(specify):*
   c. [ ] as occupant.
   d. [x] On behalf of *(specify):* Impulse Repair LLC
   under the following Code of Civil Procedure section:

   [ ] 416.10 (corporation)
   [ ] 416.20 (defunct corporation)
   [ ] 416.30 (joint stock company/association)
   [ ] 416.40 (association or partnership)
   [ ] 416.50 (public entity)
   [ ] 415.95 (business organization, form unknown)
   [ ] 416.60 (minor)
   [ ] 416.70 (ward or conservatee)
   [ ] 416.90 (authorized person)
   [ ] 415.46 (occupant)
   [x] other: Limited Liability Company

7. **Person who served papers**
   a. Name: Joshua Cintas
   b. Address: 9815 Kika Ct. San Diego, CA 92129
   c. Telephone number: (858) 395 2646
   d. **The fee** for service was: $
   e. I am:
   (1) [ ] not a registered California process server.
   (2) [x] exempt from registration under Business and Professions Code section 22350(b).
   (3) [ ] a registered California process server:
   [ ] owner [ ] employee [ ] independent contractor.
   (ii) Registration No.:
   (iii) County:

8. [x] **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   **or**

9. [ ] **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 07/02/2021

Joshua Cintas
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

Josh Cintas
(SIGNATURE)

For your protection and privacy, please press the Clear This Form button after you have printed the form. Print this form Save this form Clear this form

Electronically FILED by Superior Court of California, County of Los Angeles on 06/08/2021 06:23 PM Sherri R. Carter, Executive Officer/Clerk of Court, by D. Williams,Deputy Clerk
21STCV21495

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
IMPULSE REPAIR LLC, a Utah limited liability company; and DOES 1-100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
MARY-LISA GUILLAUME, an individual, et al (see attachment)

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
111 N. Hill St., Los Angeles, CA 90012 [Stanley Most Courthouse]

CASE NUMBER: *(Número del Caso):*
21STCV21495

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jamie L. Carper, Carper Law, PLLC, 3651 Lindell Road, Suite D1211, Las Vegas, Nv 89103

DATE: *(Fecha)* 06/08/2021
Clerk, by *(Secretario)* Sherri R. Carter Executive Officer / Clerk of Court D. Williams, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of (specify):

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form Save this form Clear this form

SUM-200(A)

| SHORT TITLE: Mary-Lisa Guillaume, et al v. Impulse Repair LLC | CASE NUMBER: |
|---|---|

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

[X] Plaintiff [ ] Defendant [ ] Cross-Complainant [ ] Cross-Defendant

ROBERT LAICH, an individual;
RYAN ARTOLACHIPE, an individual;
BRYCE MACCHARLES, an individual;
GRACIELA SAENZ, an individual;
SARAH SMITH, an individual;
JADE WALLIS, an individual

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form Save this form Clear this form

Electronically FILED by Superior Court of California, County of Los Angeles on 06/08/2021 06:23 PM Sherri R. Carter, Executive Officer/Clerk of Court, by D. Williams Deputy Clerk
21STCV21495
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Christopher Lui

**CARPER LAW, PLLC**
Jamie L. Carper, Esq. (SBN: 337225)
3651 Lindell Road, Suite D1211
Las Vegas, NV 89103
Telephone: (702) 582-9374
jamie@carperlawfirm.com

**LAW OFFICE OF JOSHUA M. CINTAS**
Joshua M. Cintas, Esq. (SBN: 334594)
9815 Kika Ct.
San Diego, CA 92129
Telephone: (858) 395-2646
joshmcintas@gmail.com

*Attorneys for Plaintiffs*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES (UNLIMITED JURISDICTION)**

**MARY-LISA GUILLAUME, an individual;**
**ROBERT LAICH, an individual;**
**RYAN ARTOLACHIPE, an individual;**
**BRYCE MACCHARLES, an individual;**
**GRACIELA SAENZ, an individual;**
**SARAH SMITH, an individual;**
**JADE WALLIS, an individual;**

Plaintiff,

v.

**IMPULSE REPAIR LLC, a Utah limited liability company; and DOES 1-100, inclusive,**

Defendants.

Case No.: 21STCV21495

**COMPLAINT FOR VIOLATIONS OF CALIFORNIA RESTRICTIONS ON UNSOLICITED COMMERCIAL E-MAIL (Cal. Bus. & Prof. Code § 17529.5)**

**JURY TRIAL DEMANDED**

**1 of 21**
**COMPLAINT**

## I. INTRODUCTION

1. In 2003, the California Legislature found that "[r]oughly 40 percent of all e-mail traffic in the United States is comprised of unsolicited commercial e-mail advertisements (hereafter spam) and industry experts predict that by the end of 2003 half of all e-mail traffic will be comprised of spam." *See* California Business & Professions ("Bus. & Prof.") Code § 17529(a).

2. The California Legislature also found that spam e-mails do cause damage and acknowledged the cost of spam in the United States in 2003: "According to Ferris Research Inc., a San Francisco consulting group, spam will cost United States organizations more than ten billion dollars ($10,000,000,000), including lost productivity and the additional equipment, software, and manpower needed to combat the problem. California is 12 percent of the United States population with an emphasis on technology business, and it is therefore estimated that spam costs California organizations well over 1.2 billion dollars ($1,200,000,000)." Bus. & Prof. Code § 17529(d).

3. However, since the California Legislature declared its findings regarding the cost of spam in 2003, the actual cost has increased dramatically. In 2012, the Journal of Economic Perspectives published an academic paper which estimated that e-mail spam cost American businesses and consumers roughly $20 billion annually. *Rao, Justin M., and David H. Reiley*. 2012. "The Economics of Spam." *Journal of Economic Perspectives*, 26 (3): 87-110.

4. As of November of 2018, spam e-mail messages accounted for 54.3 percent of the total e-mail traffic worldwide. *Symantec Corporation,* Monthly Threat Report (December 2018).

## II. SUMMARY OF THE COMPLAINT

5. Plaintiffs MARY-LISA GUILLAUME, an individual; ROBERT LAICH, an individual; RYAN ARTOLACHIPE, an individual; BRYCE MACCHARLES, an individual; GRACIELA SAENZ, an individual; SARAH SMITH, an individual; and JADE WALLIS, an individual, (collectively "Plaintiffs") bring this Action against Defendant IMPULSE REPAIR LLC, a Utah limited liability company, and DOES 1-100 (collectively,

"Defendants") for advertising in *at least* two-hundred-eleven (211) unsolicited commercial emails[1] (*i.e.*, "spams") sent to Plaintiffs' California email addresses beginning on or about in violation of Bus. & Prof. Code § 17529.5 ("Section 17529.5").

6. The spam e-mails sent by Defendants materially violated Bus. & Prof. Code § 17529.5 because the spams (1) contain or are accompanied by a third-party's domain name without the permission of the third party, or (2) contain or are accompanied by falsified, misrepresented, or forged header information, or (3) have subject lines that Defendants know would likely mislead a recipient, acting reasonably under the circumstances about a material fact regarding the contents or subject matter of the message.

7. While many violations are described below with specificity, this Complaint alleges violations of the statutes in their entirety.

8. All of the offending spam e-mails were sent to a California e-mail address.[2]

9. Plaintiffs never gave "direct consent"[3] as required by Bus. & Prof. Code § 17529.1(d) to receive commercial e-mail advertisements from, or had a "preexisting or current business relationship"[4] pursuant to Bus. & Prof. Code § 17529.1(*l*) with Defendants.

10. Defendant is strictly liable for advertising in spams sent by its third-party marketing agents, as are the marketing agents themselves. Third-party marketing agents are also liable.

---

[1] "Unsolicited commercial e-mail advertisement" means that the recipient has not provided direct consent to receive advertisements from the advertiser and does not have a preexisting or current business relationship, as defined by subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift, offer or other disposition of any property, goods, services, or extension of credit. *See* Bus. & Prof. Code § 17529.1(o)(1)-(2).

[2] "California electronic mail address" or "California e-mail address" means any of the following: (1) an e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address in this state; (2) an e-mail address ordinarily accessed from a computer located in this state; or (3) an e-mail address furnished to a resident of this state. *See* Bus. & Prof. Code § 17529.1(b).

[3] "Direct consent" means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative. Bus. & Prof. Code § 17529.1(d) (emphasis added).

[4] "Preexisting or current business relationship," as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. Bus. & Prof. Code § 17529.1(*l*).

11. Spam recipients are not required to allege or prove reliance or actual damages to have standing. *See* Bus. & Prof. Code § 17529.5(b)(1)(A)(iii). Nevertheless, Plaintiffs did suffer damages by receiving the spams. *See, e.g.*, Bus. & Prof. Code § 17529(d), (e), (g), (h). However, Plaintiffs elect to recover statutory damages only and forego recovery of any actual damages. *See* Bus. & Prof. Code § 17529.5(b)(1)(B).

12. The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

13. This Court should award Plaintiffs liquidated statutory damages against Defendants in the amount of $1,000 per unlawful spam e-mail, as authorized by Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

14. This Court should award Plaintiffs attorneys' fees pursuant to Bus. & Prof. Code § 17529.5(b)(1)(C).

## III. PARTIES

15. Plaintiff MARY-LISA GUILLAUME is now, and at all times relevant has been, an individual domiciled in the State of California, County of Los Angeles. Plaintiff owns and at all relevant times herein owned a computer with an Internet connection. This computer is located in the State of California. GUILLAUME received twenty-one (21) of the spams. Plaintiff ordinarily accesses these e-mail accounts from California. Plaintiff is a "recipient"[5] as defined by Bus. & Prof. Code § 17529.1(m) of "unsolicited commercial e-mail advertisements" as defined by Bus. & Prof. Code § 17529.1(o).

16. Plaintiff ROBERT LAICH is now, and at all times relevant has been, an individual domiciled in the State of California, County of Los Angeles. Plaintiff owns and at all relevant times herein owned a computer with an Internet connection. This computer is located in the State of California. LAICH received eleven (11) of the spams. Plaintiff ordinarily accesses these e-mail accounts from California. Plaintiff is a "recipient" as

---

[5] "Recipient" means the addressee of an unsolicited commercial e-mail advertisement. If an addressee of an unsolicited commercial e-mail advertisement has one or more e-mail addresses to which an unsolicited commercial e-mail advertisement is sent, the addressee shall be deemed to be a separate recipient for each e-mail address to which the e-mail advertisement is sent. *See* Bus. & Prof. Code § 17529.1(m).

defined by Bus. & Prof. Code § 17529.1(m) of "unsolicited commercial e-mail advertisements" as defined by Bus. & Prof. Code § 17529.1(o).

17. Plaintiff RYAN ARTOLACHIPLE is now, and at all times relevant has been, an individual domiciled in the State of California, County of Los Angeles. Plaintiff owns and at all relevant times herein owned a computer with an Internet connection. This computer is located in the State of California. ARTOLACHIPE received forty-seven (47) of the spams. Plaintiff ordinarily accesses these e-mail accounts from California. Plaintiff is a "recipient" as defined by Bus. & Prof. Code § 17529.1(m) of "unsolicited commercial e-mail advertisements" as defined by Bus. & Prof. Code § 17529.1(o).

18. Plaintiff BRYCE MACCHARLES is now, and at all times relevant has been, an individual domiciled in the State of California, County of Los Angeles. Plaintiff owns and at all relevant times herein owned a computer with an Internet connection. This computer is located in the State of California. MACCHARLES received forty-five (45) of the spams. Plaintiff ordinarily accesses these e-mail accounts from California. Plaintiff is a "recipient" as defined by Bus. & Prof. Code § 17529.1(m) of "unsolicited commercial e-mail advertisements" as defined by Bus. & Prof. Code § 17529.1(o).

19. Plaintiff GRACIELA SAENZ is now, and at all times relevant has been, an individual domiciled in the State of California, County of Los Angeles. Plaintiff owns and at all relevant times herein owned a computer with an Internet connection. This computer is located in the State of California. SAENZ received thirty-six (36) of the spams. Plaintiff ordinarily accesses these e-mail accounts from California. Plaintiff is a "recipient" as defined by Bus. & Prof. Code § 17529.1(m) of "unsolicited commercial e-mail advertisements" as defined by Bus. & Prof. Code § 17529.1(o).

20. Plaintiff SARAH SMITH is now, and at all times relevant has been, an individual domiciled in the State of California, County of Los Angeles. Plaintiff owns and at all relevant times herein owned a computer with an Internet connection. This computer is located in the State of California. SMITH received twenty-four (24) of the spams. Plaintiff ordinarily accesses these e-mail accounts from California. Plaintiff is a "recipient" as

defined by Bus. & Prof. Code § 17529.1(m) of "unsolicited commercial e-mail advertisements" as defined by Bus. & Prof. Code § 17529.1(o).

21. Plaintiff JADE WALLIS is now, and at all times relevant has been, an individual domiciled in the State of California, County of Los Angeles. Plaintiff owns and at all relevant times herein owned a computer with an Internet connection. This computer is located in the State of California. WALLIS received twenty-seven (27) of the spams. Plaintiff ordinarily accesses these e-mail accounts from California. Plaintiff is a "recipient" as defined by Bus. & Prof. Code § 17529.1(m) of "unsolicited commercial e-mail advertisements" as defined by Bus. & Prof. Code § 17529.1(o).

22. Plaintiffs' joinder in this Action is proper pursuant to Cal. Code of Civil Procedure § 378 because Plaintiffs seek relief based on the same series of transactions or occurrences: all received similar spams in the same general time period advertising Defendants' websites and its purported streaming device, and all of those spams were sent by Defendant or its Marketing Partners. The same questions of law (e.g., violations of Section 17529.5, strict liability) and fact (e.g., direct consent, practices and procedures to prevent advertising in unlawful spam) will arise in this Action. The fact that each Plaintiff does not sue for *exactly* the same spams does not bar joinder: "It is not necessary that each plaintiff be interested as to every cause of action or as to all relief prayed for. Judgment may be given for one or more of the plaintiffs according to their respective right to relief." Cal. Code Civ. Proc. § 378(b).

23. Defendant IMPULSE REPAIR LLC, is a limited liability company with its principal place of business at 255 W 400 N Huntington, UT 84528. At all times material to this Complaint, IMPULSE REPAIR LLC has owned and operated the website creditmonitor4u.com. IMPULSE REPAIR LLC transacts or has transacted business in California and throughout the United States and has created an ongoing relationship in California related to the distribution of the spam emails. Defendant is an "advertiser" as defined by Bus. & Prof. Code § 17529.1(a) in each of the e-mails received by Plaintiff.

24. Plaintiffs do not know the true names or legal capacities of the Defendants designated

herein as DOES 1 through 100, inclusive, and therefore sue said Defendants under the fictitious name of "DOE."

25. Plaintiffs are informed and believe and thereon alleges that the Defendant designated herein as a DOE Defendant is legally responsible in some manner for the matters alleged in this Complaint, and is legally responsible in some manner for causing the injuries and damages of which Plaintiffs complain. This includes the marketing affiliates and publishers that send spam emails on behalf of IMPULSE REPAIR LLC. This also includes the alter-egos of IMPULSE REPAIR LLC.

26. Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE Defendant was, at all times relevant to the matters alleged within this Complaint, acting in conjunction with the named Defendants, whether as a director, officer, employee, agent, affiliate, customer, participant, or co-conspirator. When the identities of DOE Defendants 1-100 are discovered, or otherwise made available, Plaintiffs will seek to amend this Complaint to allege their identity and involvement with particularity.

## IV. JURISDICTION AND VENUE

27. This Court has jurisdiction over the Action because Plaintiffs are domiciled in and citizens of California, and Plaintiffs received the unlawful spams in California.

28. Plaintiffs are California residents who received the emails in California and have thus been harmed in California.

29. Defendant transacts or has transacted business in California and throughout the United States and has created an ongoing relationship in California related to the distribution of the spam emails.

30. Plaintiffs are informed and believe and thereon allege that Defendant advertised in numerous spam emails sent to California residents, including Plaintiffs.

31. Plaintiffs are informed and believe and thereon allege that Defendant hired, conspired, partnered or joint ventured with unknown third parties to send these spam emails to California residents, including Plaintiffs, in order to advertise its products and/or services.

32. Plaintiffs are informed and believe and thereon allege that Defendant was aware or should have been aware that its agents, co-conspirators, partners, joint venturers were sending spam emails advertising their services to California residents.

33. Plaintiffs are informed and believe and thereon allege that Defendant created and engaged in an ongoing relationship in California related to the distribution of the spam emails.

34. Plaintiffs are informed and believe and thereon allege that Defendant caused to be sent numerous spam emails to the email servers of Google, LLC, a Delaware LLC with email servers in Mountain View, California.

35. Plaintiffs are further informed and believe and thereon allege that the spam e-mails at issue contain remote images and hyperlinks that allow Defendant and its marketing affiliates to collect "click reports" which aggregate various types of data whenever the e-mails are opened or the hyperlinks are clicked by a recipient. These click reports also allow Defendant and its marketing affiliates to review the IP addresses of individuals who click on the hyperlinks in the spam e-mails, including their location in California, and Defendant and its marketing affiliates thereby intentionally availed themselves of the benefits and protections of California and knowingly targeted and/or transacted business with residents of California via commercial e-mail, such as Plaintiff.

36. Venue is proper in Los Angeles County (or indeed, *any* county in California of Plaintiffs' choosing) because Defendant is a foreign company that has not designated the location and address of a principal office in California or registered to do business in California with the California Secretary of State. *See Easton v. Superior Court of San Diego (Schneider Bros. Inc.)*, 12 Cal. App. 3d 243, 246 (4th Dist. 1970).

## V. TECHNICAL BACKGROUND

37. "A 'domain name' is defined by an 'alphanumeric designation that is registered with or assigned by any domain name registrar as part of an electronic address on the Internet.'" *Balsam v. Trancos, Inc.*, 203 Cal.App.4th 1083, 1090 fn. 6 (quoting Bus. & Prof. Code § 17529.1 subd. (e)).

38. "WHOIS" refers to the means of determining the identity of a domain registrant. "Technically, WHOIS is not the database, itself, but a protocol for submitting a query to a database in order to find contact information for the owner of a domain name." *Solid Host NL v. NameCheap, Inc.*, 652 F. Supp. 2d 1092, 1095 fn. 3 (C.D.Cal. 2009) (citing Matthew Bierlin & Gregory Smith, *Privacy Year in Review: Growing Problems with Spyware and Phishing, Judicial and Legislative Developments in Internet Governance, and the Impacts on Privacy,* 1 I/S: J.L. & POL'Y FOR INFO. SOC'Y 279, 313 (2005)).

39. "To secure the creation, registration, and use of a domain name, one must first assent to the registrar's contract. In addition to the payment of a small fee, the contract requires a potential registrant to agree to (1) provide and maintain current and accurate identifying information…" *In re Forchion*, 198 Cal. App. 4th 1284, 1308-09 (2011).

## VI. THE UNLAWFUL SPAMS

40. Plaintiffs allege that Defendant engaged in tortious conduct: "a civil wrong, other than breach of contract, for which a remedy may be obtained, usually in the form of damages; a breach of a duty that the law imposes on persons who stand in a particular relation to one another." *Tort*, BLACK'S LAW DICTIONARY (11th ed. 2019).

### A. The Emails at Issue are Unsolicited Commercial E-Mail Advertisements (*i.e.* "Spam")

41. Plaintiffs hereby incorporates the foregoing paragraphs as though set forth in full herein.

42. Plaintiffs received *at least* two-hundred-eleven (211) spams advertising Defendant's websites at Plaintiffs' California e-mail address.

43. The e-mails at issue are "commercial e-mail advertisements" [6] because they advertise credit score protection, review, and increase, provided by Defendant at the website *creditmonitor4u.com*. The spams were initiated for the purpose of advertising and promoting Defendant's credit report subscription products or services.

44. The e-mails are "unsolicited commercial e-mail advertisements" because Plaintiffs never

---

[6] "Commercial e-mail advertisement" means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit. Bus. & Prof. Code § 17529.1(c).

gave "direct consent" to Defendant, or any of its affiliates to send commercial e-mails.

45. Plaintiffs have never had a "preexisting or current business relationship" with Defendant, or its affiliates.

46. Plaintiffs did not opt-in to receive e-mails from Defendant's marketing agents. Even *if* Plaintiffs had opted in to receive e-mails from Defendant's marketing agents—which Plaintiffs deny—that would not constitute *direct* consent to Defendant, the advertiser in the spams. *See Balsam v. Trancos Inc.*, 203 Cal. App. 4th 1083, 1099-1100 (1st Dist. 2012).

47. Plaintiffs did not consent or acquiesce to receive the spams at issue. Plaintiffs did not waive any claims related to the spams at issue.

48. Defendant advertised in, sent, and/or conspired to send *at least* two-hundred-eleven (211) unlawful spams that Plaintiffs received at Plaintiff's "California e-mail address[es]."

49. The spams are all unlawful because the spams contain or are accompanied by materially false and deceptive information, such as the use of third-party domain names without the third party's permission, and/or falsified, misrepresented, or forged information contained in or accompanying the e-mail headers, and/or misleading Subject Lines, as described in more detail below.

### B. The Spam E-mails Contain Header Information That Is Materially Falsified or Misrepresented Because They Use Sender Domain Names That *Neither* Identify the Actual Sender *Nor* Are Readily Traceable to the Sender in Violation of Business & Professions Code § 17529.5(a)(2)

50. The "From" line field is part of e-mail headers. The From line has two distinctive parts: (1) the From Name, and (2) the Sender E-mail Address. For example, if an e-mail's "From" 'line states: "John Doe <johndoe@yahoo.com>", the From Name is "John Doe" and the Sender E-mail Address is "<johndoe@yahoo.com>."

51. The From Name in an e-mail's header is designed to identify *who* the e-mail is from. The Internet Engineering Task Force created a collection of "Requests for Comment" ("RFCs") that define the rules and standard protocols that enable e-mail to work. According to RFC 5322 at ¶ 3.6.2 (emphasis in original):

> The "From:" field specifies the author(s) of the message, that is, the mailbox(es) of the person(s) or system(s) responsible for the writing of the message. . . . In all cases, the "From:" field SHOULD NOT contain any mailbox that does not belong to the author(s) of the message.

52. The only content of a "From" line visible before an e-mail is opened is the "From Name." Therefore, a From Name that misrepresents *who* a spam is from is a deliberate and material misrepresentation of the most important part of the e-mail header—not a mere clerical error.

53. Although Plaintiffs *do not* bring any claims under the federal CAN-SPAM Act, the Federal Trade Commission ("FTC") identified the From Name as the first item in misleading header information in its guide to CAN-SPAM compliance when it stated: "Don't use false or misleading header information. Your "*From*," "To," "Reply-To," and routing information – including the originating domain name and e-mail address – *must be accurate and identify the person or business who initiated the message*." Federal Trade Commission, CAN-SPAM Act: A Compliance Guide for Business (emphasis added).[7]

54. Plaintiffs do not insist on any particular label (*e.g.*, "Impulse Repair," "CreditMonitor4u," etc.) in the From Name field. Rather, Plaintiffs contend that the text of a From Name field, whatever it is, cannot misrepresent *who* the e-mails are from.

55. The spam emails Plaintiffs received included e-mail advertisements that contained or were accompanied by materially falsified, misrepresented, or forged header information in violation of Section 17529.5(a)(2) because they include a generic From Name, an untraceable sending domain name, and no information in the body which could be used to readily identify the sender or advertiser.

56. Plaintiffs received spam e-mails from sender domain names that did not identify the actual sender and which were not readily traceable to the sender from the body of the spam e-mails or by using a publicly available online database, such as WHOIS.

57. Defendants engaged in acts of material falsity and deception by deliberately using

---

[7] *See* http://www.business.ftc.gov/documents/bus61-can-spam-act-compliance-guide-business.

untraceable, privately and/or "proxy" registered domain names to conceal its identity from the recipients of its spams.

58. The senders of the spam e-mails deliberately registered the domain names in a manner that prevents recipients from identifying who actually sent the e-mail, and are materially false and deceptive.

59. Thus, the untraceable domain names used in the spam e-mails to advertise Defendant affirmatively and falsely represent both the identity of the sender and that the sender has no connection to Defendant. *See Balsam v. Trancos, Inc.*, 203 Cal. App. 4th 1083, 1098.

60. All of the spam e-mails that Plaintiffs received advertising Defendant's websites contained forged, falsified, or misrepresented header information and had From Names that misrepresented *who* the spams were from, and therefore violated Section 17529.5(a)(2).

61. Here, most the spam emails at issue include generic From Names, such as "Credit Score Card," "CreditScoreReview," "2020scoredetails.com," and "Credit Score Center. These generic From Names misrepresent *who* is advertising in the email, and therefore violate Section 17529.5(a)(2). Further, the From Name that includes the purported domain name 2020scoredetails.com has not even been registered on the WHOIS database.

62. The use of these generic From Names is false and misleading because they do not identify the sending party or advertiser and cannot be readily traced back to the true owner/sender. The use of these From Names is also intended to prevent recipients from being able to identify Defendant as the true source of the emails.

63. Plaintiffs are informed and believe and thereon allege that Defendant knowingly chose to advertise using generic From Names precisely so that recipients will *not* know who the emails are really from when viewing the spams in the inbox view. This forces recipients to open the emails to see if the emails might actually be from someone with whom the recipient has had dealings, or if the emails are in fact, as is the case here, nothing but spams.

64. There is no way that ordinary, reasonable consumers, looking at the same or similar emails, could readily associate the From Names with Defendant, the true advertiser and beneficiary of the spam emails, and the sender's identity is not readily ascertainable from the body or

content of the spam emails, which did not readily identify the actual sender of the e-mails or Defendant.

65. These generic, forged, falsified, or misrepresented From Names are utterly ambiguous as to *who* the spam e-mails are from, and contain misrepresented information because the spams are not from these purported senders. In fact, the spams could just as easily have come from Defendant's competitors or some other entity or individual.

66. In *Rosolowski v. Guthy-Renker LLC*, the court permitted From Names that were not the sender's official corporate name as long as the identity of the sender was readily ascertainable in the body. 230 Cal. App. 4th 1403, 1407, 1416 (2d Dist. 2014). However, the From Names in that case (Proactiv and Wen Hair Care) were the advertiser's fanciful trademarks and well-known brands with their own websites. But here, unlike the spams in *Rosolowski*, the From Names are generic and are not well-known trademarks or brands readily associated with Defendant. There is no way an ordinary consumer, looking at the same or similar email From Name in their inbox, could readily associate them with Defendant.

67. Registration information for the domain names used to send spams is information contained in or accompanying e-mail headers.

68. "[H]eader information in a commercial e-mail is falsified or misrepresented for purposes of Section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual sender on its face *nor* is readily traceable to the sender using a publicly available online database such as WHOIS" and the sender's identity is not readily ascertainable from the body of the e-mail." *See Balsam*, 203 Cal. App. 4th at 1101 (emphasis in original); *Rosolowski*, 230 Cal. App. 4th at 1417.

69. The spams that Plaintiffs received advertising Defendant were purportedly sent from domain names that were "proxy" registered, privately registered, fraudulently registered, unregistered forged domains which do not actually exist, and even third-party domain names that also violate 17529.5(a)(1). Thus, the domains were not readily traceable to the

sender by querying the WHOIS database, in violation of Section 17529.5. *See Balsam*, 203 Cal. App. 4th at 1097-1101.

70. The unregistered domain names used in forged sender addresses are *xvl8z.org, x33ngtk9.us, wr58z4m3.us, vqcaj.org, v3sk9.org, tspoc53v.us, smioz.us, pc0q4.us, p7xh61ac.us, l0g59xgr.us, k2sv2.us, jp00x.us, h8wa4a9y.us, fx3km.us, fvx61.us, fu786.us, dlihc997d4.us, ccx7f2i69m.us, 364b7.us, 28siuwjr.us, 7u37u.us, 7q6no.us, 7dg5g2ss.us, 4k2wu83o.us, 0x5zl.org, rwq86893.us, rvsyz.us, p28cv81odk.us, p6yf8.us, nbr0f.us, kwxte.org, k48312of.us, j587v.org, j97m4531.us, ikj5e.us, gieay.us, fo27i.us, e60y5.org, baz94983.us, a59zqgqp3q.us, 6569goeca.us, 75d65uk822.us, 53jhnq0p.us, 45kof.org, 8y2x2.us, 4scej.us, 1wbc9.org, yt09c5r0.us, vn0l53n6.us, v8sgt.us, v3b9x72p.us, usi798s4.us, tt2na.org, sxkki.us, o896759i.us, o5pdm588.us, n41kg48lyd.us, m30ww04x.us, l9v743r6.us, jt396.us, gmia9p6l.us, f4cpt.us, d3u69.us, d0llno65.us, btr32w56.us, bh3299xy.us, 27264g01.us, 444a0qth.us, 49d92gdf.us, 9p5bfjo5.us, 6es3wzd0.us, 6bia7.us, 5weci.org, 2j7o5.org, 1v1e8.us, 0szhowrh.us, 0bq1p.us, 0boco.org, z8muy3bd.us, 0s310n82.us, e1gtx.org, ak42c8gu.us, 5779mxx2.us, 695ny.org, 54v532p3.us, 52qyu.org, 32fxf.us, 8fo35.org, 08b8e.us, 7fjqn.us, 5wtkc9069u.org, 4gd09ap36n.org, 3z317.org, 1xy0m.org, 0sa15521p2.org, 0ignd.org, fq00jrf2.us, ho2a44d4.us, m3yxk.us, m37uu.us, ok57k5aw.us, r0wbq.us, r7268i4070.us, rw73c.org, ry6rt.org, v5f6t.org, vcuau.us, jdw01.us, y6sy6.us, q3dgs.org, pbc8pna3.us, mtp2k.us, m5yz6.us, j4zgn.us, i0067k8394.us, ffu0p4fw27.us, e05oe984.us, dwagg.org, cyjjl.us, 500bjkpo.us, 92y613p8.us, 020wy7a3.us, 7n8gd.org, 6t0bw.us, 5ule7.org, 1rjn48fa.us, zp44a.org, yg15y.us, y302w.us, xg3671a8.us, w8149090.us, w7r7w.us, w1rpk.us, u51b3.org, trga9.org, pptl7.org, mt4cu7he12.us, m1i5x.org, k81x921w42.us, iw4jc.us, i1wdd.org, h9krd.us, g2d4n0ay73.org, fqc18.us, d0cfeq96.us, bpn3z.us, bgnfc.org, b35oo.org, 5118n4h6.us, 934p5ls71c.org, 686lr.org, 49t4l.us, 46y7nz42wf.org,* 9sx7j.org, *8awnh.us*, *7yd2nr3fzk.us*, *6hjio.us, 4p5ai.org, 3qwsfq7oak.org, 2r4wijwa58fkpa3w555.us*, and *0dzxs.us*. Plaintiffs are informed and believe and thereon allege that Defendants

advertise in spam emails with forged unregistered sender domain names to conceal the sender's identity.

71. The third-party domain name used by the sender without permission of the owner is *amazonaws.com*—which is owned by Amazon.com, Inc. Plaintiffs are informed and beliebe and thereon allege that Amazon.com, Inc. did not provide permission for the Defendants to use Amazon.com, Inc's domain name in any spams. Plaintiffs are informed and believe and thereon allege that Defendants advertise in spam emails with forged third-party sender domain names to conceal the sender's identity.

72. Some spams have purported sender email addresses that contain proxy registered domain names. These domain names are *onehabitchanges.com* and *costscribe.com*. Plaintiffs are informed and believe and thereon allege that Defendants advertise in spam emails with proxy-registered sender domain names to conceal the sender's identity.

73. Some spams contain purported sender addresses that contain domain names that are fraudulently registered on the WHOIS database. The domains *acticize.com, controng.com,* and *zimbark.com* are registered to Karisa Omalley at 440 Winchester Street, Palatine, IL 60067. The domains *aboselexandin.com, largetict.com, plealt.com,* and *groblis.com* are registered to Eldridge Engels at 4029 Washington Avenue, Jackson, MS 39213. The domain *amusefusic.com* is registered to Aaliyah Weston at 3661 Brown Street, Tucson, AZ 85724. Plaintiffs are informed and believe and thereon allege that nobody with the names Karisa Omalley, Eldridge Engels, or Aaliyah Weston had anything to do with registering the domain names and are not the true names of the domains registrants. Further, the addresses at 440 Winchester Street, Palatine, IL 60067, 4029 Washington Avenue, Jackson, MS 39213, and 3661 Brown Street, Tucson, AZ 85724 do not physically or actually exist. Plaintiffs are informed and believe and thereon allege that Defendants knowingly use domain names fraudulently registered on the WHOIS database in order to conceal their identities.

74. Plaintiffs could not identify Defendant or its spamming affiliates who sent the spams at issue by querying the WHOIS database for the domain names used to send the spam e-

mails at issue.

75. Plaintiffs are informed and believe and thereon allege that there is no database online where an email recipient could find any Defendants by searching for or tracing the From Names.

76. Thus, the spam e-mails received by Plaintiffs advertising Defendant were not readily traceable to the sender by querying the WHOIS database, in violation of Section 17529.5. *Balsam*, 203 Cal. App. 4th at 1097-1101.

77. Here, the From Name fields in the headers of the spam e-mails contained or were accompanied by generic From Names that neither disclose the true sender's identity nor permit the recipient to readily identify the sender. Therefore, such header information *is* deceptive and *does* constitute a falsification or misrepresentation of the sender's identity in violation of Section 17529.5(a)(2). *See Balsam*, 203 Cal. App. 4th at 1097.

**C. <u>The Spam Emails Have Subject Lines That Are Materially Misleading Relative to the Contents of the Emails in Violation of Business & Professions Code § 17529.5(a)(3)</u>**

78. Section 17529.5(a)(3) prohibits Subject Lines that are likely to mislead a reasonable recipient relative to the contents or subject matter of the e-mails.

79. Defendants advertised in spam e-mails that had Subject Lines that are likely to mislead a recipient acting reasonably under the circumstances about a material fact regarding the contents or subject matter of the e-mails.

80. Samples of the Subject Lines contained in the spams include variations of "Negative Impacts on your Credit Score Due to COVID-19?" and "Your 2020 transunion, Equifax, and experian credit-scores."

81. The Subject Line is materially misleading because a recipient acting reasonably could read the Subject Lines and believe that there has been a negative impact on their credit score, or that the spam email contains the recipient's credit scores.

82. Thus, each of the Subject Lines, even when viewed in conjunction with the body of the e-mail, is materially false and deceptive and likely to mislead a recipient acting reasonably about a material fact regarding the content or subject matter of the message.

/

**D. Defendant is Strictly Liable for the Spam E-mails Sent By its Marketing Agents**

83. Plaintiffs are informed and believe and thereon allege that Defendant contracted with third-party advertising networks and affiliates to advertise its websites for the purpose of selling products and services for a profit.

84. Defendant knowingly, intentionally, and voluntarily chose to outsource their advertising to third-party spam networks and spammers.

85. Advertisers are liable for advertising in spam e-mails, even if third parties sent the e-mails:

> "There is a need to regulate the advertisers who use spam, as well as the actual spammers because the actual spammers can be difficult to track down due to some return addresses that show up on the display as 'unknown' and many others being obvious fakes and they are often located offshore. The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements." (Bus. & Prof. Code § 17529(j)(k).) "It is unlawful [ ] *to advertise* in a commercial e-mail advertisement [ ] under any of the following circumstances…"

Bus. & Prof. Code § 17529.5 (emphasis added). Thus, Defendant's agents are also liable for sending the unlawful spams.

86. Section 17529.5(a) "makes an entity *strictly liable* for advertising in a commercial e-mail . . . *regardless of whether the entity knew that such e-mails had been sent* or had any intent to deceive the recipient." *Hypertouch Inc. v. ValueClick Inc.*, 192 Cal. App. 4th 805, 820-21 (2011) (emphasis added).

87. In fact, in *Hypertouch*, the court of appeal held that advertisers are *strictly liable* for advertising in false and deceptive spams, even if the spams were sent by third parties.

> *[S]ection 17529.5* makes it unlawful for a person or entity "to advertise in a commercial e-mail advertisement" that contains any of the deceptive statements described in *subdivisions (a)(1)-(3)*. Thus, by its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails.
>
> Thus, like other California statutes prohibiting false or misleading business practices, the statute makes an entity *strictly liable* for advertising in a commercial e-mail that violates the substantive provisions described in section 17529.5, subdivision (a) *regardless*

> *of whether the entity knew that such e-mails had been sent* or had any intent to deceive the recipient.

*Id.* at 820-21. The court did not find that this was an arbitrary requirement; rather, the court identified sound policy reasons behind the Legislature's decision to create a strict liability statute. *Id.* at 829.

88. Moreover, Plaintiffs are informed and believe and thereon allege that Defendant and/or Defendant's affiliates and/or Defendant's marketing agents intended to deceive recipients of their spam messages through the use of falsified, misrepresented, and/or misleading information in third-party domain names, From Names, domain name registrations, and Subject Lines, as described herein.

89. Forged Sender E-mail Addresses do not write themselves. The false and misrepresented information contained in and accompanying the e-mail headers are not "clerical errors." Plaintiffs are informed and believe and thereon allege that Defendant and/or Defendant's affiliates and/or Defendant's marketing agents went to great lengths to create falsified and misrepresented information contained in and accompanying the e-mail headers in order to materially deceive recipients, Internet Service Providers, and spam filters.

90. Plaintiffs are informed and believe and thereon allege that Defendant has knowledge that its affiliates/marketing agents engage in the sending of false and deceptive spam.

91. Plaintiffs are informed and believe and thereon allege that Defendant and its marketing agents intended to profit, actually profited, and continue to profit, and were unjustly enriched by, their wrongful conduct as described herein.

**E. <u>No Proof of Reliance or Actual Damages is Necessary Because Plaintiffs Sue for Statutory Liquidated Damages</u>**

92. The California Legislature set liquidated damages as $1,000 per spam. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

93. Plaintiffs are informed and believe and thereon allege that the $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43(b).

94. Plaintiffs' rightful and lawful demand for liquidated damages in the amount of $1,000 per e-mail are necessary to further the California Legislature's objective of protecting California residents from unlawful spam.

95. Section 17529.5 does not require Plaintiffs to quantify their actual damages, allege or prove reliance on the advertisements contained in the spams, or purchase the goods and services advertised in the spams. Recipients of unlawful spam have standing to sue and recover liquidated damages. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820, 822-23, 828.

96. However, Plaintiffs did suffer damages by receiving the unlawful spams advertising Defendant's products and services in the state of California, at their California e-mail addresses. Bus. & Prof. Code § 17529(d), (e), (g), (h). Regardless, Plaintiffs do not seek actual damages in this Action, only liquidated damages. Bus. & Prof. Code § 17529.5(b)(1)(B).

97. Plaintiffs are informed and believe and thereon alleges that Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

## FIRST CAUSE OF ACTION

**[Violations of California Restrictions on Unsolicited Commercial E-mail, California Business & Professions Code § 17529.5]**

**(Against All Defendants)**

98. Plaintiffs hereby incorporate the foregoing paragraphs as though set forth in full herein.

99. Plaintiffs received the spam e-mails within one year prior to filing this Complaint.

100. Defendant advertised in, sent, assisted others in sending, conspired to send, contracted with others to send, and/or otherwise caused to be sent *at least* two-hundred-eleven (211) unsolicited commercial e-mail advertisements to Plaintiff's California electronic mail addresses that had materially falsified, forged and/or misrepresented information contained in or accompanying the e-mail headers, and third-party domain names without the permission of the third party, in violation of Bus. & Prof. Code § 17529.5.

101. Plaintiffs are informed and believe and thereon allege that some of the emails use hypertext markup language ("HTML") in the body which reference remote images, which are not part of the email body but rather a link to a web server that could be anywhere on the Internet and controlled by any unknown third party. Many email clients automatically block remote images preventing recipients from seeing the sender upon initially opening the email.

102. A remote image is *not* actually part of the email body, but rather is a link to an image hosted on a remote web server that could be anywhere on the Internet and controlled or manipulated by Defendant or an unknown third party. *See ZooBuh, Inc. v. Better Broadcasting, LLC* 2013 U.S. Dist. LEXIS 77033 *22 n. 29 (D. Utah 2013).

103. Some spammers use remote hosted images to detect when emails are opened to detect active email addresses so that the spammer can either resell the email address and/or direct more emails to active email addresses which open emails.

104. Plaintiffs are informed and believe and thereon allege that most email clients, including Plaintiffs', automatically block remote hosted images in spam as a security measure to prevent spammers from detecting active email addresses.

105. The use of remote hosted images permits the senders to make the emails "self-destructing" in order to hide the identities of the Defendant and to avoid responsibility for Defendant's deliberately misleading unsolicited email advertisements and illegal activities.

106. The unlawful elements of these spam e-mails represent willful acts of falsity and deception, rather than clerical errors.

107. The California Legislature set liquidated damages at one thousand dollars ($1,000) per e-mail.

108. Plaintiffs seek reimbursement of reasonable attorneys' fees and costs as authorized by Section 17529.5(b)(1)(C).

109. The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5. By prosecuting this action, Plaintiffs expect to enforce an important right affecting the public interest and

thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that judgment be entered against Defendant for:

- An Order from this Court declaring that Defendant violated Bus. & Prof. Code § 17529.5, by advertising in and sending unlawful spam e-mails.
- Liquidated damages of $211,000 against Defendant in the amount of $1,000 per each of the two-hundred-eleven (211) unlawful spam e-mail, as authorized by Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).
- Reasonable attorneys' fees and costs as authorized by Bus. & Prof. Code § 17529.5(b)(1)(C).
- Disgorgement of all profits derived from unlawful spams directed to California residents; monies to be turned over to the Unfair Competition Law Fund and used by the California Attorney General to support investigations and prosecutions of California's consumer protection laws.
- Costs of suit.
- Such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to the California Constitution and California Code of Civil Procedure § 631, Plaintiffs are entitled to, and demands, a trial by jury.

Dated: June 7, 2021

Respectfully submitted,

**CARPER LAW, PLLC**

By: ______________________
JAMIE L. CARPER, ESQ.
*Attorney for Plaintiff*